[Filed April 30, 1891.]

JAMES HELM ET AL. *v.* WM. GILROY ET AL.

| | |
|---|---|
| 20 | 517 |
| 23 | 338 |
| 26 | 851 |
| 31 | 647 |
| 20 | 517 |
| 32 | 94 |
| 32 | 346 |

PRELIMINARY INJUNCTION — PROVISIONAL REMEDY — TITLE. — A preliminary injunction ': a provisional remedy, the sole object of which is to preserve the subject in controversy in its then condition; and courts of equity in granting or refusing the same. should in no manner anticipate the ultimate determination of the question of right involved.

WHEN APPEAL WILL LIE FROM ORDER GRANTING OR REFUSING SAME. — An order granting or refusing a preliminary injunction does not ordinarily partake of the nature of a final judgment to such an extent as to warrant an appeal therefrom; but when the court not only refused the injunction, but entered a decree settling the rights of the parties, an appeal will lie.

ASSIGNEE UNDER GENERAL ASSIGNMENT LAW, TITLE OF. — An assignee, under the general assignment law, takes no better title than his assignor, and is affected by all the equities existing as against him.

FIXTURES, WHEN AS BETWEEN MORTGAGOR AND MORTGAGEE, MACHINERY IS. — As between mortgagor and mortgagee, machinery necessary for and used in the operation of a sash and door and planing mill, when affixed to the building by screws, bolts. pulleys and bands, is a fixture, and subject to the lien of the mortgage.

Jackson county: L. R. WEBSTER, Judge.

Plaintiff appeals.   Modified.

The property in controversy in this suit is certain machinery necessary for and used in operating what is known as a sash and door factory and planing mill at Ashland, Oregon. This machinery was purchased on April 22, 1887, of the Parke & Lacy Machinery Company, of Portland, by defendant Wm. M. Gilroy, and one Youle, who were the owners of the real estate, water-power and building in which the machinery was placed. The agreement between the P. & L. M. Co. and Gilroy & Youle was, in form, a lease for twelve months, at a stipulated rental of $2,093, payable $900 in cash, and balance at stated times during the year; and upon the payment of this rent Gilroy & Youle were to have the right to purchase the property for two dollars. By this lease, Gilroy & Youle agreed that they would not permit the machinery, or any part thereof, to be affixed to real estate. After said machinery was received at Ashland, it was placed in the building prepared for it, and attached thereto by screws, bolts, pulleys and bands in the manner such machinery is usually attached to buildings. Gilroy & Youle used and operated said mill and machinery for some time, when Gilroy purchased the interest of Youle and continued to use and operate the same until May 13, 1889, when he and his wife executed and delivered to one G. F. Pennebaker their mortgage to secure the payment of the sum of $3,500 on or before one year after date, which mortgage was subsequently assigned to plaintiffs. This mortgage in terms only describes the real estate upon which said mill is situated and its appurtenances. Two days after the execution of the mortgage, Gilroy made a general assignment for the benefit of his creditors to defendant Rogers of all his property. On January 30, 1890, there remained due from Gilroy & Youle to the P. & L. M. Co. on the purchase price of said machinery, $879.89. Rogers paid the same from money in his hands as assignee, and received from the company a bill of sale of said machinery. On May 13, 1890, no payments having been made on the mortgage, plaintiffs commenced a suit to foreclose the same, making Gilroy and wife and

Rogers defendants, but neither of them appeared or made defense thereto. On August 11, 1890, the plaintiff filed an amended complaint, which, among other things, particularly described said machinery, and alleged that it was a part of the realty and subject to the lien of plaintiff's mortgage, and that defendant Rogers, as assignee of Gilroy, was in possession of the property and threatened to remove the machinery and sell and dispose of the same, and would do so unless enjoined by order of the court, and praying for a preliminary injunction. Rogers answered, denying that the machinery was a part of the realty or subject to the lien of plaintiff's mortgage, and alleging the purchase by him of the P. & L. M. Co. A reply having been filed, the cause was heard before the court on the 26th of August, 1890, and a decree entered adjudging that the machinery was not part of the real estate described in plaintiff's mortgage, nor subject to the lien thereof, and hence this appeal.

*H. K. Hanna,* for Appellant.

*Austin S. Hammond,* for Respondent.

BEAN, J.—This case comes here on appeal from an order denying a preliminary injunction. The record is in a very unsatisfactory condition. In place of trying the issue between the parties in the original suit to foreclose plaintiff's mortgage, as should have been done, it seems it was tried on a proceeding for a preliminary injunction, in aid of the original suit. In this proceeding, the court, after hearing the evidence, not only denied the writ, but entered a decree determining the question as to whether the property in controversy was subject to the lien of plaintiff's mortgage, thereby splitting up the original cause of suit; in the original suit entering a decree foreclosing the mortgage and ordering the real property sold to satisfy the amount due plaintiff, and in the ancillary proceedings for an injunction, determining the question as to whether the machinery was a part of such realty, when the entire question should have been put in issue either by

the original or an amended complaint and determined by one decree.

A preliminary injunction is only a provisional remedy, the sole object of which is to preserve the subject in controversy in its then condition and without determining any question of right, merely to prevent the further perpetration of wrong, or the doing of any act whereby the right in controversy may be materially injured or endangered. In granting or refusing temporary relief by preliminary injunction, courts of equity should in no manner anticipate the ultimate determination of the question of right involved. They should merely recognize that a sufficient case has or has not been made out to warrant the preservation of the property or rights *in statu quo* until a hearing upon the merits, without expressing a final opinion as to such rights. (1 High Inj. § 4; Hill's Code, §§ 408, 411.) The granting or refusing such an injunction rests largely within the discretion of the court, and being merely an interlocutory order, made during the progress of the cause, does not ordinarily partake of the nature of a final judgment or decree to such an extent as to warrant an appeal therefrom. (2 High Inj. § 1693.) But in this case, the court not only refused the injunction but entered a decree settling the rights of the parties, and in effect determined the suit so as to prevent a decree therein, so far as this machinery is concerned, and therefore it must necessarily be an appealable order or decree under section 535, Hill's Code; (*Smith* v. *Walker*, 57 Mich. 456; *Tol. A. A. & N. Mich. Ry.* v. *Det. L. & N. R. R.* 61 Mich. 9.)

From what has already been said, it follows that so much of the decree of the court below as adjudges and decrees " that the machinery referred to and described in plaintiff's complaint for injunction is not a part of the real estate in controversy in this suit, and not included in plaintiff's mortgage," must be reversed. But since the question seems to have been determined in the court below on a full hearing of the evidence, which is made a part of the transcript, and both parties expressed a desire on the argument that we

should examine the case on its merits, we have concluded to do so.

It is argued for respondent that under the agreement between the P. & L. M. Company and Gilroy & Youle, the machinery in controversy did not become fixtures, but retained its character as chattels, notwithstanding its annexation to the building in which it was placed, and was therefore not subject to the lien of the plaintiff's mortgage. Before discussing this question, it will be well to understand the relationship of the parties to this record. The defendant Rogers, who alone is contesting plaintiff's claim, is the assignee of the defendant Gilroy, plaintiff's mortgagor, under the general assignment law of this state. As such assignee he succeeds only to the rights of his assignor, and is affected by all the equities existing as against him. He takes the property subject to all existing valid liens and charges. He acquires no better title than his assignor, and in this suit can make no defense to the mortgage that his assignor could not make. (*Jacobs Bros. & Co.* v. *Ervin,* 9 Or. 52; *Gammons* v. *Holman,* 11 Or. 284; Burrill on Assignment § 391.) The fact that he may have paid the P. & L. M. Co. with funds belonging to him as assignee the balance due to it from Gilroy & Youle on the purchase price of the machinery, does not change his relationship to the property in any way. It is in effect the same as if Gilroy himself had made the payment. He does not acquire title to this property by virtue of the bill of sale from the P. & L. M. Co., but by virtue of the deed of assignment from Gilroy. While the agreement between the P. & L. M. Co. and Gilroy & Youle was in form a lease, it was in effect a sale, and whatever right if any the company may have had as against this property was never asserted by it. It follows, therefore, that if the property in controversy was subject to the lien of plaintiff's mortgage, as between them and Gilroy, such lien exists as against this defendant. The question then as to whether this machinery became a fixture as to the P.

& L. M. Co. is immaterial in this case, and we forbear to express an opinion thereon.

It has often been remarked that the law of fixtures is one of the most uncertain titles in the entire body of jurisprudence. The line between personal property and fixtures is often so close and so nicely drawn that no precise rule has or can be laid down to control in all cases. Each case must depend largely on its own particular facts. The reports and text-books are filled with decisions and discussions of this question, but none of the rules laid down are infallible or of universal application. We shall not attempt to quote from them, nor enter into any detailed discussion of the the question. We could not hope to throw any new light upon the vexed question. The weight of modern authority, keeping in mind the exceptions as to constructive annexation, admitted by all the authorities to exist, seems to establish the doctrine that the true criterion of an irremovable fixture consists in the united application of several tests: (1) Real or constructive annexation of the article in question to the realty. (2) Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected. (3) The intention of the party making the annexation, to make the article a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the policy of the law in relation thereto, the structure and mode of the annexation and the purpose or use for which the annexation has been made. (*Henkle* v. *Dillon*, 15 Or. 610; Ewell on Fixtures, 21; *Teaff* v. *Hewitt*, 1 Ohio St. 511; *Thomas* v. *Davis*, 76 Mo. 72, 43 Am. Rep. 756; *Clore* v. *Lambert*, 78 Ky. 224; *Southbridge Sav. Bank* v. *Stevens Tool Co.* 130 Mass. 547.) Applying these rules to the facts in hand, it is clear that the property in controversy as between the mortgagor and mortgagee must be regarded as fixtures. Its annexation to the realty was sufficiently permanent to enable it to be used for the purposes intended, and was of the character usual with such machinery. It is

true the screws and bolts with which it was annexed could have been taken out and the machinery removed without serious damage to it or the building, but so no doubt could have been the doors and windows. It was in its very nature adapted to the business for which the land was used. The party making the annexation must have intended that it should remain as long as it continued serviceable, as the convenience and usefulness of the property would have been seriously impaired by its removal.

So much of the decree of the court below as adjudges and decrees that the machinery in controversy is not part of the realty, and not subject to the lien of plaintiff's mortgage, is therefore reversed.