Argued January 26, decided February 7, 1911.

## BLANCHARD v. EUREKA PLANING MILL COMPANY.

[113 Pac. 55.]

FIXTURES—PERSONAL PROPERTY—ATTACHMENT TO REALTY.

1. Whether a chattel remains such after being attached to the realty depends on the method of its annexation, real or constructive, its adaptability to the uses and purposes of the realty, and the intent of the parties.

FIXTURES—CHATTELS—BUYER AND SELLER.

2. As between buyer and seller of a chattel, it may by agreement be made to retain its personal character even though affixed to the buyer's realty, so that it may be removed without injury to the building to which it is attached.

FIXTURES—MACHINERY—SELLER AND MORTGAGEE.

3. An unrecorded conditional sale of mill machinery reserving title in the seller is valid as against a prior mortgagee of the mill, where it was sold to be used in the mill, and was so affixed as to become a fixture.

From Columbia: THOMAS A. MCBRIDE, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

On November 7. 1906, the defendant Eureka Planing Mill Company executed and delivered to plaintiff, as security for the repayment of a $2,500 loan, with interest, a mortgage on the following described property:

"Commencing at a point where a line running parallel with and along the north side of Water Street in the town of Rainier would intersect the east boundary line of a certain piece of tide land, sold and deeded by Dean Blanchard to F. C. Winchester; thence running northerly along the east boundary line of said piece of tide land to the Columbia River; thence easterly up the Columbia River sixty feet; thence southerly parallel with said northerly line to a point on line with the north side of Water Street; thence westerly sixty feet to the place of beginning."

Thereafter, in a proceeding to foreclose the mortgage, the usual decree was rendered by the circuit court for Columbia County on July 7, 1908. For the purpose of satisfying the decree, the sheriff of such county duly advertised the premises for sale on August 15, 1908. On November 3, 1906, the defendant Columbia River Door Company entered into a contract, in writing, with the Eureka Planing Mill Company, by which the former delivered to the latter certain machinery to be used in connection with the planing mill and to be placed in a building situated upon the property described in the above mortgage, namely, two moulders, a surfacer, matcher, and mortiser, together with heads, knives, bits, bolts, etc., for the consideration of $925, payable in installments, for which promissory notes were executed. The contract contained the following clause:

"Title to the property shall continue to vest in the first party until fully paid for as above provided. In case of default, the first party or its agents may enter upon the premises and retake the property without process of law, sell the same and apply the proceeds on said notes as a credit thereon."

On or about the 10th day of November, 1906, the personal property mentioned in the agreement was delivered to the Eureka Planing Mill Company, and placed in the building, and used therein in connection with the operation of the mill. After the decree of foreclosure, but prior to the sale of the property, upon the decree, namely,

about August 1, 1908, the defendant, Columbia River Door
Company entered upon the premises for the purpose of
retaking all of the property mentioned in the contract, as
therein provided, and removed the same from the build-
ing and placed it without the building, awaiting an oppor-
tunity to ship it. Defendant Tatum & Bowen on Decem-
ber 14, 1906, entered into an agreement in writing with
the Eureka Planing Mill Company, by which they were to
deliver to the mill company one Hoyt planer and mortiser
and one set of matcher heads with ship lap attachments,
in furtherance of the mill company's plan to equip the
building to be used as a planing mill on the real estate
above mentioned. Tatum & Bowen agreed to "deliver to
the second party, subject thereto, and upon the full per-
formance hereof, will sell and transfer to the second
party, the following personal property. * * This is to be
located by the second party and to remain until the full
performance hereof in Columbia County, State of Oregon,
unless the first party's written consent to removal be first
obtained. * * Title to the property shall continue to vest
in the first party until fully paid for as above provided"—
the price being $870, payable in installments. The
machinery was established in such building. About
August 1, 1908, Tatum & Bowen removed it from the
building to the platform outside preparatory to shipping
it to Portland. On August 10, 1908, plaintiff brought a
suit against the Columbia River Door Company and also
one against Tatum & Bowen to enjoin them from remov-
ing the machinery from the premises, contending that it
became a fixture and a part of the real estate covered by
the mortgage. Defendants contend that by these con-
tracts the property was intended to and did remain per-
sonal property, and the title thereto continued in the
vendors, a portion of the purchase price thereof being
still unpaid. For the purpose of the trial, the two suits
were consolidated under the above title. Plaintiff by his

reply to the answer of the Columbia River Door Company alleged that the money so loaned by him was to be used in purchasing machinery, among which was that in question here; that the same was to be placed in the mill and made a part thereof, so as to become subject to plaintiff's mortgage; and that he did not at any time have knowledge that the machinery had not been paid for in full or that defendants claimed to have retained the title thereto. In his reply to the answer of Tatum & Bowen he alleges that the building was on the premises at the time of the execution of the mortgage, and thereafter the machinery was placed in it, firmly fastened and affixed, namely, bolted to the building, so as to become a part thereof, and that he had no knowledge of defendants' claim thereto. Upon the trial the lower court made findings in favor of plaintiff and rendered a decree adjudging that the machinery became a fixture, subject to the mortgage, and enjoined its removal. The defendant Columbia River Door Company and Tatum & Bowen appeal.        REVERSED.

For appellants there was a brief over the names of *Mr. Robert C. Wright* and *Messrs. Coovert & Stapleton,* with oral arguments by *Mr. Wright* and *Mr. E. E. Coovert.*

For respondent there was a brief and an oral argument by *Mr. L. S. Thomas.*

Opinion by MR. CHIEF JUSTICE EAKIN.

1. The rule that whatever is affixed to the soil becomes a part of the realty has been much relaxed in accordance with trade and modern business requirements. In many instances the personal quality of the chattel is retained, even though there is an appreciable annexation. Whether it shall remain a chattel after it is affixed to the realty depends upon three conditions, annexation, real or constructive, adaptability to the use or purpose of the realty to which it is attached, and the intention of the parties

making the annexation to make it a permanent accession to the freehold.

2. As between the vendor and vendee of such personalty, it may, by agreement, be made to retain its personal character, even though affixed to the realty in a manner in which it can be removed without injury to the building. Therefore in this case, as between the defendant, Eureka Planing Mill Company, and defendants, Columbia River Door Company and Tatum & Bowen, the title to the property remained in the vendors until full payment of the purchase price, according to the terms of this agreement. *Helm* v. *Gilroy,* 20 Or. 517 (26 Pac. 851) ; *Muir* v. *Jones,* 23 Or. 332 (31 Pac. 646: 19 L. R. A. 441) ; *Alberson* v. *Mining Co.,* 39 Or. 552 (65 Pac. 978) ; *Washburn* v. *Inter-Mountain Min. Co.,* 56 Or. 578 (109 Pac. 382).

3. But when the chattel is affixed to the realty, the situation is changed as to the rights of a purchaser or an incumbrancer without notice of the terms of the agreement. The condition of the agreement, being unrecorded, is in the nature of a secret lien, which is contrary to the policy of the law, and where the machinery was sold for that purpose and was affixed it became a fixture. This question is fully discussed and decided in the cases above cited. The query arises here as to plaintiff's rights under the facts disclosed. It appears from the pleadings that this machinery was installed in the building subsequent to the execution of the mortgage. Plaintiff therefore is not a subsequent purchaser for value, and cannot complain of the terms of the sale of the chattel by which the title is retained by the vendor. By the act of 1909 (Laws 1909, p. 237; L. O. L. § 7414), it is now necessary to file notice of sale, but is not applicable to this case.

This question was discussed in *Alberson* v. *Mining Company,* 39 Or. 552 (65 Pac. 978), where the lessee under a contract to purchase had placed fixtures upon the property of the lessor subject to a chattel mortgage. It was

there contended that after forfeiture of the lessee's right to purchase the fixtures became the property of the original owner of the mine, and the court say:

"Now, going back to the election to purchase, when that was done, the property became a part of the freehold in the status it had been assumed, the owners paid nothing of value for it, and it is difficult to see how a forfeiture could give them the standing of a purchaser in good faith. We are satisfied that it could have no such effect."

The rule in all such cases is that to preclude the vendor from claiming the chattel under such an agreement the owner of the realty must have been a purchaser thereof for value subsequent to the annexation of the fixture and without notice that the vendor retained the title. *Landigan v. Mayer*, 32 Or. 245 (51 Pac. 649: 67 Am. St. Rep. 521) ; *Union Bank, etc., Company* v. *Wolf Company*, 114 Tenn. 255 (86 S. W. 310: 108 Am. St. Rep. 903), to which case there is an exhaustive note in 4 Am. & Eng. Ann. Cas. 1073, where the rule is stated:

"That in the absence of notice a subsequent purchaser or mortgagee of the land is not bound by an agreement between the owner of the land and one from whom he purchases chattels that such chattels, though annexed to the realty, shall retain their character as personalty, and that the title to them shall remain in the seller until he has been paid for them."

In *Boston Safe-Deposit & Trust Company* v. *Bankers' & Merchants' Tel. Co.* (C. C.) 36 Fed. 297, referring to telegraph wires stretched upon poles on the railroad right of way, which was subject to mortgage, it is said:

"With respect to this class of property the parties in interest may agree that it shall remain personalty, subject to be removed; and such an agreement determines the real character as against an existing mortgage."

To the same effect are *Brand* v. *McMahon*, 15 N. Y. Supp. 39; *Padgett* v. *Cleveland*, 33 S. C. 339 (11 S. E.

1069) ; *Tifft* v. *Horton,* 53 N. Y. 377 (13 Am. Rep. 537.)

In this case plaintiff is not a purchaser for value or mortgagee of the property subsequent to the annexation of the fixtures, and the title of the defendants thereto is unaffected by the mortgage.

The decree of the lower court will be reversed and the suit dismissed.          REVERSED : SUIT DISMISSED.

Mr. Justice MCBRIDE took no part in the decision of this case.