Argued April 24, reversed and remanded June 4, 1918.

# ROSEBURG NAT. BANK *v.* CAMP.*

(173 Pac. 313.)

**Execution—Sale of Realty and Personalty.**

1. Since a judgment debtor may under Sections 240, 244, L. O. L., redeem realty sold on execution, but cannot redeem personalty, and since under Sections 5132, 5136, placer mining claims and ditches are realty, it was error to confirm sale on execution of such claims and pipe-lines and tools thereon in one unsegregated bid and for a lump sum, part of which were personalty, because the amount to be paid in redemption could not be·ascertained.

**Execution—Sale of Realty and Personalty.**

2. In view of Section 238, L. O. L., requiring execution sales of realty to be at the courthouse door, and those of personalty in view of the purchasers, and in view of the different provisions for notice of such sale, as applying to realty and personalty, the statutes do not contemplate an execution sale of realty and personalty *en masse.*

**Fixtures—Mode of Annexation.**

3. Annexation of personalty to realty is not the sole test whether the fixture is removable, though it is an essential element, and if a chattel is so annexed as to be incapable of severance, it is usually conclusively part of the realty.

> [As to what is a sufficient levy of attachment on a fixture, see note in Ann. Cas. 1916B, 993.]

**Fixtures—Mode of Annexation—Pipe-lines.**

4. Pipe-lines for placer mining, attached to water bulkhead and laid over surface of ground, and giants attached to end of the pipe-line, while taken apart and moved each year, are sufficiently attached to the realty to imply annexation.

**Fixtures—Adaptation and Use.**

5. The element of adaptation to the land and its use is entitled to great weight, in connection with intention, in determining whether fixtures are attached to and part of the realty.

**Fixtures—Intent in Making Annexation.**

6. In determining whether fixtures are attached to and part of the realty the intention of the party is the most important element, and may be inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose and use for which the annexation has been made.

---

* For authorities discussing the question as to whether building materials placed on land with the intention of annexing them, but never in fact annexed, are fixtures, see notes in 69 L. R. A. 898 and 15 L. R. A. (N. S.) 727.                                    REPORTER.

**Fixtures—Relation of Parties.**

7. In determining whether fixtures are attached to and part of the realty, the relation and situation of the party making the annexation is an important factor, and must be taken into consideration.

**Fixtures—Between Mortgagor and Mortgagee.**

8. Rules for determining whether fixtures are attached to and part of the realty, which apply between grantor and grantee, also apply between mortgagor and mortgagee.

**Fixtures—Intent—"Permanent."**

9. If the annexation is not intended to be permanent, an article of personal property will not be deemed realty; and for the purpose of discovering whether the annexation was intended to be permanent the degree and mode of annexation may be considered, and also whether the annexation is to make the chattel or the land more useful, but "permanent" does not mean "perpetual," but only continuance until the usefulness of the land or the article passes.

**Fixtures—Mortgagor and Mortgagee—Pipe-line.**

10. Pipe-lines for placer mining, attached to water bulkhead and laid over surface of ground, and giants attached to end of the pipeline, while taken apart and moved each year, and connected by slip joints, which the mortgagor did not intend to make permanent accessions to his mining claim, were not part of the realty.

From Douglas: GEORGE F. SKIPWORTH, Judge.

Department 1.

The defendants appealed from an order confirming a sale of property which had been sold pursuant to an execution issued on a money judgment and a decree foreclosing a mortgage. On May 27, 1909, E. N. Camp executed and delivered to H. G. Sonnemann a promissory note for $8,681.67 payable on or before two years after date. Camp owned, subject to the paramount title of the United States, 680 acres of unpatented placer mining ground together with ditches and water rights. He also owned mining tools, pipe, giants and buildings, all of which he used in working his mining ground. For the purpose of securing the note Camp gave a mortgage on the 680 acres of mining property "together with all the ditches and water rights and all the mining tools, machinery, pipe, giants and buildings situated thereon." Sonnemann

assigned the note and mortgage to the Roseburg National Bank. The note was not paid and the plaintiff commenced a suit on the note and mortgage. Camp answered, but subsequently on March 27, 1916, pursuant to a stipulation of the parties, a personal judgment was entered against Camp for the amount due on the note and the court decreed the foreclosure of the mortgage and directed that "said mortgaged real and personal property be sold as upon execution." An execution was issued to the sheriff who returned the writ on November 3, 1916. The sheriff recites in his return on the writ that he levied upon the 680 acres "together with all the ditches and water rights and all mining tools, machinery, pipe, giants and buildings situated thereon"; that he gave notice by publication and posting; that he "exposed said property for sale in one parcel, there being no bidder for any less than the whole" and "did sell in one parcel said above described mining property to the said Roseburg National Bank" for the sum of $10,786.86.

At the time of the execution of the mortgage Camp had upon the 680 acres, and the mortgage included, about 10,000 feet of sheet steel hydraulic mining pipe, four giants, shovels, picks, mattocks, crowbars, drills, sledge-hammers, crevice tools, gads and a pipe valve. The four giants, the pipe valve and the pipe were on the ground at the time of the sale on execution. Some of the tools such as crowbars, which were on the ground at the time of the execution of the mortgage still remained on the premises when the sale on execution occurred, but many and perhaps most all the other tools including shovels, mattocks and picks had been broken "and replaced every year."

The pipe is "ordinary slip joint movable pipe"
and is used to carry water "from some mining ditch"
to the giant.   The intake for the pipe-line usually con-
sists of "a penstock or bulkhead which is at the mouth
of the ditch," but sometimes the water is taken from
the side of the ditch through a temporary gate.   The
penstock is made of heavy timber and is permanent.
The first joint of pipe is "slid" into the penstock and
is tamped and calked so as to prevent the "head of
water" from washing it out; the end of a second joint
of pipe is slipped over the outer end of the first joint
and succeeding joints are similarly connected; and the
pipe is laid upon the ground to whatever place the
water is to be used and a giant is attached to the end
of the pipe-line.   All the pipe, except the first joint in
the penstock, is usually taken apart and re-set each
year because the "work is ordinarily changed almost
every year."   The first joint which is "slid" into the
penstock is usually left there, although as stated by
one witness "perhaps another year we cut a hole on
the other side of the bulkhead and take the water that
way."

At the time of the sale on execution two of the
giants were disconnected while the other two were
connected with the pipe-line; and joints of pipe, aggre-
gating about 2,000 feet, were not connected up but
were "just lying loose in stock in different places"
on the ground.

The pipe valve had not been used for seven or eight
years and was worth about $75.   The pipe was worth
from 65 cents to $4 per foot, depending upon the size.
The two disconnected giants were worth between $350
and $500 and each of the other giants was worth about
$250.   The value of the tools was probably $400.

The defendants objected to a confirmation of the sale

"for the reason that the said property described in said return as having been sold consisted of both real and personal property and said real and personal property were all sold together in one unsegregated bid and lump sum without defining the bid for either the personal property or the real property.

"There was included in said attempted sale some 680 acres of mining ground held under mining locations and some four giants, several thousand feet of pipe and a large amount of tools and other personal property.   That all of said giants, pipe and tools were personal property.   That it is impossible to tell what sum was bid for said personal property and what sum bid for said real property and therefore should said sale be confirmed the said defendants and each of them as their interests appear will be prevented from redeeming said real property unless they pay in addition to the sum bid upon said real property the said sum bid upon said personal property.   That they will thereby be compelled to repay for said personal property without having the title thereof restored as there is no right of redemption upon personal property."

The objections were overruled; the sale was confirmed; and the defendants appealed.

REVERSED AND REMANDED.

For appellants there was a brief and an oral argument by *Mr. Albert Abraham.*

For respondent there was a brief and an oral argument by *Mr. B. L. Eddy.*

HARRIS, J.—1. A judgment debtor can redeem realty but he cannot redeem personalty when sold on execution: Sections 240 and 244, L. O. L.   The unpatented placer mining claims, embraced within the 680 acres, and the ditches are by statute declared to be

real estate: Sections 5132 and 5136, L. O. L. Camp had a right, therefore, to redeem the mining claims and the ditches but he could not redeem the pipe, giants and mining tools if they were personalty. That some of the property was personalty is admitted by the plaintiff, for the mortgaged property is thrice referred to in the complaint as "real and personal property." The Circuit Court recognized that some of the property was personalty for as many as five several times the decree speaks of the mortgaged "real and personal property." Although the tools, the pipe valve, the loose pipe and the two disconnected giants are adapted for use either separately or in connection with the line already laid, nevertheless they are not necessary to make complete, nor are they component parts of, the pipe-line already laid. The joints of pipe which are connected and ready for use make a complete pipe-line; and, therefore, even though it be conceded that the pipe-line laid upon the ground and the two giants connected with the line are a part of the realty, nevertheless the tools, the pipe valve, the 2,000 feet of loose pipe and the disconnected giants are personalty.

2. The statute provides that sales of real property shall be made at the courthouse door, while sales of personal property capable of manual delivery, and not in the possession of a third person, shall be within the view of those who attend the sale: Section 238, L. O. L. The statute also provides for the posting of three notices not less than ten days successively in the case of personal property and for both publishing in a newspaper and posting of a notice for four weeks in the case of real property. The Code does not contemplate a sale of realty and personalty *en masse* but it is plain from every provision of the Code that the per-

sonalty must be segregated and sold separately from the realty. Camp could not in any event redeem the personal property; and yet if the order appealed from stands he could not know how much to tender for the redemption of the realty. If obliged to tender the whole purchase price it would be equivalent to compelling him to pay for the redemption of the realty "the amount of the purchase money" of both the realty and personalty, when the statute only contemplates payment of the amount of the purchase price of the property redeemed. Some of the property sold on execution was indisputably personal property and hence a resale will be necessary.

The plaintiff contends that the pipe and giants which are connected together and laid upon the ground for use in carrying water from the ditches are real property while the defendants insist that they are still personalty; and, since the mortgaged property must be resold, it becomes necessary to determine whether the joints of pipe and giants were transformed from personalty into realty when the owner of the land connected them together and laid them upon the ground for use in placer mining. The pipe and giants are essential for hydraulic mining operations. Placer mining requires water; pipes are necessary to carry the water; and giants are essential to apply it. A placer mining claim without water is only a site for a mine. It is a mere prospect. The pipe and giants were not intended to be used in some employment distinct from the use of the soil but they were placed in position so that the owner could work the ground.

3. The old rule that all things annexed to the realty become a part of it has been much relaxed. Annexation is not the sole test for determining whether a fixture is removable or irremovable. The line between

removable and irremovable fixtures is sometimes so close and difficult to ascertain that it is impossible to frame a precise, unbending and infallible rule which can be applied to all cases. Each case must depend largely upon its own special facts and peculiar circumstances: *Oregon Ry. & N. Co.* v. *Mosier,* 14 Or. 519, 520 (13 Pac. 300, 58 Am. Rep. 321); *Helm* v. *Gilroy,* 20 Or. 517, 522 (26 Pac. 851). In the celebrated case of *Teaff* v. *Hewitt,* 1 Ohio St. 511 (59 Am. Dec. 634), the conclusion was reached that there could be no one test by which to determine in all cases whether a chattel had become a part of the freehold, but that it required the united application of the following tests:

(1) Real or constructive annexation of the article in question to the realty.

(2) Appropriation or adaptation to the use or purpose of that part of the realty with which it is connected.

(3) The intention of the party making the annexation, to make the article a permanent accession to the freehold, this intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the policy of the law in relation thereto, the structure and mode of the annexation and the purpose or use for which the annexation has been made.

This court, as well as the courts in many other jurisdictions, has approved the formula adopted in *Teaff* v. *Hewitt,* 1 Ohio St. 511 (59 Am. Dec. 634); 19 Cyc. 1037; *Henkle* v. *Dillon,* 15 Or. 610, 614 (17 Pac. 148); *Helm* v. *Gilroy,* 20 Or. 517, 522 (26 Pac. 851); *Honeyman* v. *Thomas,* 25 Or. 539, 540 (36 Pac. 636); *Matthiesen* v. *Arata,* 32 Or. 342, 346 (50 Pac. 1015, 67 Am. St. Rep. 535); *Alberson* v. *Elk Creek Mining Co.,* 39 Or. 552, 558 (65 Pac. 978); *Blanchard* v. *Eureka Planing Mill Co.,* 58 Or. 37, 40 (113 Pac. 55, 37 L. R. A.

(N. S.) 133); *Johnson* v. *Pacific Land Co.*, 84 Or. 356, 361 (164 Pac. 564); *Gates* v. *Public Service Commission*, 86 Or. 442, 451 (167 Pac. 791, 168 Pac. 939).

Annexation, actual or constructive, is an essential element. Pure examples of constructive annexation are found in cases where after having been actually annexed an article is severed from the realty for some temporary purpose. There are a few cases, sometimes called cases of "ideal annexation," like *Byrne* v. *Werner*, 138 Mich. 328 (101 N. W. 555, 110 Am. St. Rep. 315, 69 L. R. A. 900); *Rahm* v. *Domayer*, 137 Iowa, 18 (114 N. W. 546, 15 L. R. A. (N. S.) 727), and *Patton* v. *Moore*, 16 W. Va. 428 (37 Am. Rep. 789), which hold that the intention to devote a chattel to the uses of realty accompanied with the mere act of bringing it on the realty amount to annexation; but in most jurisdictions this doctrine of "ideal annexation" is rejected: 19 Cyc. 1044; *Blue* v. *Gunn*, 114 Tenn. 414 (87 S. W. 408, 108 Am. St. Rep. 912, 4 Ann. Cas. 1157, 69 L. R. A. 892). If a chattel is so annexed as to be incapable of severance without injury to the freehold it is usually conclusive that it has become part of the realty: *Johnson* v. *Pacific Land Co.*, 84 Or. 356, 361 (164 Pac. 564). In the instant case the pipe and giants can be removed without impairing them or injuring the land and therefore the single element of annexation is not conclusive. As was said by this court in *Doscher* v. *Blackiston*, 7 Or. 144, 146: the courts in many of the states have abandoned the notion that to constitute an irremovable fixture the article must be attached to the land by bolts or nails or be imbedded in brick or stone, and

"the true rule now for determining whether a thing is to be regarded as a fixture or not is said to be to consider the character of the act by which the struc-

ture is put in place, the policy of the law connected with its purpose, and the intention of those concerned in the act."

In the recent case of *Johnson* v. *Pacific Land Co.,* 84 Or. 356, 361 (164 Pac. 564), it is said that, although annexation is an essential element to transform a chattel into an irremovable fixture nevertheless

"the extent and mode of actual annexation have but little weight except in so far as it relates to the nature of the article itself, the use. to which the same is applied, and other circumstances as indicating the intention of the party making the annexation."

4. Although the pipe and giants are not so attached as to be conclusively a part of the realty, yet the attachment is sufficient to supply the element of annexation: *Doscher* v. *Blackiston,* 7 Or. 144, 146; 19 Cyc. 1040.

5. It must be conceded that the element of adaptation is present. This element is usually entitled to much weight especially when considered in connection with the element of intention; and as stated in *Johnson* v. *Pacific Land Co.,* 84 Or. 356, 362 (164 Pac. 564),

"the tendency is to regard everything as a fixture which has been attached to realty with a view to the purposes for which the realty is held or employed, however slight or temporary the connection between them."

6. The intention of the party making the annexation is the most important element. The intention existing at the time of procuring the article in question, nor that which exists while the article is in transit to the realty on which it is to be placed, nor the secret intention with which it is affixed, does not govern; but the controlling intention is that which the law deduces from all the circumstances of the annexation. The intention is to be inferred from the nature of the

article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose and use for which the annexation has been made: *Young* v. *Hatch,* 99 Me. 465 (59 Atl. 950, 2 Ann. Cas. 374) ; *Rahm* v. *Domayer,* 137 Iowa, 18 (114 N. W. 546, 15 L. R. A. (N. S.) 727) : *Roseville Alta Min. Co.* v. *Iowa Gulch Min. Co.,* 15 Colo. 29 (24 Pac. 920, 22 Am. St. Rep. 373) ; *Alberson* v. *Elk Creek Min. Co.,* 39 Or. 552, 559 (65 Pac. 978) ; 19 Cyc. 1046; 11 R. C. L. 1062.

7, 8. The relation and situation of the party making the annexation is an important factor and must be taken into consideration when attempting to ascertain his intention. The rule governing a grantor and grantee would likewise control a mortgagor and mortgagee and hence whatever would be an irremovable fixture as between a grantor and grantee would also be deemed realty as between a mortgagor and mortgagee. When an article is annexed by a tenant a more liberal rule is applied so that what would be deemed to be realty as between a vendor and purchaser might be no more than a trade or domestic fixture as between a landlord and tenant. The difference in the relationship emphasizes the difference in the intention attributed to the party making the annexation. When additions are made to land by the owner the purpose is usually to enhance the value and to be permanent; but on the other hand when additions are made by a tenant they are usually made for a temporary purpose and not with a view of making them a part of the land; and consequently in order to encourage trade, manufacture and industrial pursuits, the tenant is generally allowed to remove what is apparently annexed to the freehold if affixed for the purpose of trade and not merely for the better enjoyment of the

premises: *Doscher* v. *Blackiston,* 7 Or. 144; *Johnson* v. *Pacific Land Co.,* 84 Or. 356, 361 (164 Pac. 564); *Overman* v. *Sasser,* 107 N. C. 432 (12 S. E. 64, 10 L. R. A. 722); *Young* v. *Hatch,* 99 Me. 465 (59 Atl. 950, 2 Ann. Cas. 374); *Liscombe Falls Gold Min. Co.* v. *Bishop,* 35 Can. Sup. Ct. 539 (2 Ann. Cas. 735).

9. If the annexation is not intended to be permanent an article of personal property will not be deemed realty; and for the purpose of discovering whether the annexation was intended to be permanent the degree and mode of annexation may be considered, and also whether the annexation is to make the chattel or the land more useful. Permanence does not imply that the annexation must be perpetual but it means as stated in 19 Cyc. 1047 "that the article shall, if actually affixed, remain where fastened until worn out, or until the purposes of the realty are accomplished"; or as said in *Fisk* v. *People's Nat. Bank,* 14 Colo. App. 21, 27 (59 Pac. 63),

"that chattels may be permanently an accession to the land, a purpose that they should remain there forever, or even until they are worn out by use, is not necessary. It is sufficient that their situation is to be as permanent as the business in which they are to be used."

10. It is probable and we may assume that the pipe and giants were purchased by the owner and placed upon the ground with the intention of using them for the sole purpose of washing the 680 acres of placer mining ground and without any expectation of afterwards carrying them away or of entirely removing them from the premises; and yet this assumption is not determinative, for the same assumption could also be made with respect to the picks, mattocks and other tools. The very purpose for which the pipe-line was

used necessarily involved annual or possibly more frequent changes in the line, because the pipe-line is taken to the work, wherever that may be, instead of the work to the pipe-line. The pipe-line must be extended from time to time so as to keep pace with the progress made in washing the ground in any given area; or when the place of work is changed the pipe-line must be changed. The joints of pipe are not riveted together but they are connected after the fashion of an ordinary stove-pipe. In brief, the pipe and giants were moved from time to time and from place to place on the premises as convenience might require; and as stated by one witness the pipe "is reset usually every year, being transferred from one place to another, wherever we want to carry the water." The pipe-line was nothing more than a large and heavy implement. Although heavier and consequently more difficult to move, the pipe-line may appropriately be likened to a garden hose. The mortgagor did not intend to make the pipe and giants a *permanent accession* to the land and therefore the pipe-line did not become an irremovable fixture: 19 Cyc. 1047; *Rogers* v. *Brokaw,* 25 N. J. Eq. 496; *Feder* v. *Van Winkle,* 53 N. J. Eq. 370 (33 Atl. 399, 51 Am. St. Rep. 628); *Atlantic Safe Deposit & Trust Co.* v. *Atlantic City Laundry Co.,* 64 N. J. Eq. 140, 145 (53 Atl. 212). The order appealed from is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

BEAN, BENSON and BURNETT, JJ., concur.