BENJAMIN F. YOUNG, et al. *vs.* HORATIO N. HATCH.

Penobscot.    Opinion February 17, 1905.

*Fixtures.    Intention.    Mortgagor and Mortgagee.    Hot Water Heating Apparatus.*

1.  As between mortgagor and mortgagee, annexations affixed to an estate by the owner, before mortgage, of such a character as are apparently calculated to be for the permanent use and enjoyment of the realty, are presumed to be intended to form a part of the realty, and pass with it by a mortgage.

2.  Accordingly a hot water heating apparatus and copper hot water tank and fixtures, set up by the owner of the premises in his dwelling house, is held, between him and one to whom he afterwards mortgaged the premises, to have merged in the realty, and to have passed by the mortgage to the mortgagee.

On report.    Judgment for plaintiffs.

The case sufficiently appears in the opinion.

*W. B. Pierce and L. C. Stearns,* for plaintiffs.

*H. H. Patten,* for defendant.

SITTING:  WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

SAVAGE, J.    Trespass by mortgagees against mortgagor for taking and removing from the mortgaged premises a hot water heating apparatus consisting of a heater, radiators and piping, and a copper hot water tank and fixtures.    The defendant mortgaged his dwelling house and the land on which it stood to the plaintiffs, April 8, 1902. At that time all the property mentioned had been set up by the owner and was in use in the house.    The heater was set on the cellar

XCIX  30

bottom, and was connected by pipes running through the floor with radiators on the first floor, and by pipes running up in the partitions with the radiators on the second floor. The radiators were not fastened to the floors. The hot water tank was connected with the stove in the kitchen. It stood on an iron stand. The tank was connected by pipes with the sink on the same floor, and through the ceiling and floor overhead, with a bath tub and lavatory. These pipes were not attached to the wall of the room, except in one place. The tank was suitable to be used in connection with any stove. After foreclosure proceedings were commenced by the plaintiffs, but while the defendant remained in possession, he removed the property which has been described from the premises without doing material injury, and this is the trespass complained of. The only question argued is whether these articles were a part of the realty, and so covered by the plaintiffs' mortgage.

It was said in *Hayford* v. *Wentworth*, 97 Maine, 347, a case between landlord and tenant, that a chattel is not merged in the realty unless there be physical annexation, at least by juxtaposition, adaptability, and an intention on the part of the person making the annexation, to make it a permanent accession to the realty. The rule thus stated is in accord with the general run of authorities. And it cannot be questioned, we think, that a steam heating apparatus and a hot water boiler connected with sink and bath room in the dwelling house, as in this case, are clearly within the rule, as to annexation and adaptation. It only remains to speak of intention.

In *Readfield Tel. & Tel. Co.* v. *Cyr*, 95 Maine, 287, it was declared that while it was impossible to reconcile all the cases upon this subject, "the most modern and approved rule appears to be to give special prominence to the intention of the party making the annexation." Then after noticing some apparent exceptions to the rule the court said, "they will be found to involve no real conflict with the rule above stated, when we remember that the intention which is material is not the hidden, secret intention of the party making the annexation, but the intention which the law deduces from such external facts, as the structure and mode of attachment, the purpose and use for which the annexation has been made and the relation and

situation of the party making it." And out of the relation and situation of the party making the annexation arises the distinction in the application of the rule as between cases between vendor and vendee, or mortgagor and mortgagee, on the one hand, and cases between landlord and tenant, or tenant for life and remainder man, on the other. The presumptions of intention arising in the two classes of cases differ. Annexations which are apparently calculated to increase the permanent value and usefulness of the realty, might be regarded as merged in the realty, in the former class, when the same annexations might remain personalty, in the latter class.

The reason for distinction is well stated in Cooley on Torts, 2nd Ed. pp. 499, 500, 501, and we adopt the language of the learned author of that work, who says, "The actual or presumed intent on the part of a party attaching a chattel to the realty that it shall constitute a part of the realty, or on the other hand that it shall remain a chattel, is usually the most important circumstance to be considered in determining the fact; and if no one were concerned with the question but the party by whom the annexation was made it might well be suffered to be controlling in all cases. But as the question of ownership often depends upon the question whether a fixture is removable or not, and men make purchases and accept liens upon property, supposing it to be of that nature, either real or personal, that appearances would indicate, it would be not only impolitic, but in many cases unjust, to suffer a secret intent to control where appearances would indicate the existence of an intent of a different nature. The law, therefore, usually acts upon the presumed rather than upon any actual intent. . . . . If a building is erected by the owner of a freehold by way of improvement thereof, and apparently for permanent use and enjoyment with it  . . . . or any erection whatsoever made which apparently is calculated to increase the permanent value of the estate for use and enjoyment, a reasonable presumption arises that the owner intended to make them a part of the realty, and the law accepts this intent as conclusive, and considers them real estate from the time they are constructed or affixed. The owner's deed, mortgage or lease of the land will convey them as a part of it, and when he dies they pass with the land to his devisee or heir at law. . . . . On the other hand,

a similar erection or attachment by one not the owner of the freehold might well be presumed to be made with the intent of removing it as a chattel. This presumption would be reasonable in most cases, because if he intended it as a permanent annexation, he would lose title to it immediately, since if he made it a part of the realty, the ownership must pass to the owner of the realty." The distinction alluded to is pointed out by Chief Justice Shaw in *Winslow* v. *Merchants Insurance Co.*, 4 Met. 306, a case between mortgagor and mortgagee, wherein he also speaks of the "presumed intention" with which improvements were made after a mortgage of the realty. "A presumption arises," he said, "from the relation to which they stand, that such improvements are intended to be permanent and not temporary."

In *Teaff* v. *Hewitt*, 1 Ohio St., Rep. 511, a frequently cited case, the court, after saying that intention of the party annexing is one of the requisities for determining whether a chattel had become merged in the realty, added:—"This intention being inferred from the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose and use for which the annexation has been made." *Parsons* v. *Copeland*, 38 Maine, 537.

As between mortgagor and mortgagee, then, it is clear from the authorities that annexations affixed to an estate by the owner before mortgage, of such character as are apparently calculated to be for the permanent use and enjoyment of the realty, are presumed to be intended to form a part of the realty, and pass with it by mortgage. And such a description certainly includes the heating apparatus and boiler in controversy here. It was covered by the mortgage, and it was a trespass for the mortgagor to remove it. *Linscott* v. *Weeks,* 72 Maine, 506.

The only evidence relating to value is found in the testimony respecting the original cost, the length of time used, and the apparent condition at the time of removal. After making all proper allowances for depreciation, we think the plaintiffs are entitled to recover three hundred dollars.

*Judgment for plaintiffs for $300.*