

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 29, 1952

Hon. Homer Garrison, Jr., Director
Texas Department of Public Safety
Austin, Texas                    Opinion No. V-1521

Re: Authority of Texas Depart-
ment of Public Safety to use
appropriated funds for finish-
ing north wing of new head-
Dear Sir:                         quarters building.

        You have requested an opinion of this office concerning
the expenditure of certain funds appropriated for placing in opera-
tion The Motor Vehicle Safety-Responsibility Act, House Bill 219,
Acts 52nd Leg., R.S. 1951, ch. 498, p. 1210. In order to properly
understand the question presented,it is necessary to discuss the
background material leading to the facts out of which your ques-
tion arises.

        Senate Bill 439, Acts 51st Leg., R.S. 1949, ch. 439, p. 882,
authorized the Texas Department of Public Safety to construct a
new building to house the various divisions of that department. In
letting the contracts for this new building,consideration was given
to the normal expansion of the divisions and sections of the De-
partment, but you state:

        " . . . No provision was made for the inclusion
    of finished space for additional sections or divisions
    of the Department, except there were excavated areas
    in the unfinished parts of the north and south wings of
    the building on the basement level. These areas were,
    of course, inclosed by walls and roof, but with dirt
    floors. No provision was made for the installation of
    electrical lines, telephone lines, plumbing facilities,
    heating, ventilation, or cooling, as it was apparent at
    the time that this section of the building would not be
    occupied."

        Subsequently, in order to comply with House Bill 219, supra,
it became necessary to establish a Motor Vehicle Safety-Responsi-
bility Division of the Texas Department of Public Safety,and it is your
desire that this division be provided space in the new building. In
order to provide this space,it will be necessary to finish a part of the

north wing of the building, which is now unfinished. The division in question is now being housed in the Department of Public Safety Headquarters Building at Camp Mabry, Austin, Texas. Your question arises out of an attempt to secure funds with which to perform this necessary finishing work.

As originally introduced, House Bill 219, supra, provided that the act was to become effective on September 1, 1951, and $300,000 was appropriated for defraying the expenses of operation from the effective date to August 31, 1952. House Journal, 52nd Leg., R.S. 1951, p. 3133. Subsequently, the Act was amended so that the effective date was changed to January 1, 1952, but the appropriation for the first year of operation remained the same. Senate Journal, 52nd Leg., R.S. 1951, p. 1364. The effect of this, you state, is to provide $100,000 in excess of the actual operating expenses of the Motor Vehicle Safety-Responsibility Division which could be used in providing quarters for the division in the new building. Concerning the use to be made of this money you state:

" . . . This money, of course, will not be used to construct a building to house this division but to finish the unfinished section referred to in the north wing of the building by providing lighting, plumbing, heating, cooling and by the construction of a floor and the necessary partitions." (Emphasis ours.)

The appropriating portion of House Bill 219, supra, is Section 37, which provides:

"There is hereby appropriated out of the Operator's and Chauffeur's License Fund such money as may be necessary for the purpose of defraying the expenses of this Act through the biennium ending August 31, 1953, not to exceed the sum of Three Hundred Thousand Dollars ($300,000) for the fiscal year ending August 31, 1952 and not to exceed the sum of Two Hundred Thousand Dollars ($200,000) for the fiscal year ending August 31, 1953. So much money as is necessary to administer this Act shall be used for the employment of necessary clerical and administrative help and for defraying the necessary expenses incident to travel, rental and any judicial hearings relative to court review, and including the printing of all necessary forms required be this Act, and including the purchase through bids taken by the Board of Control of all necessary furniture, fixtures and

equipment of any nature; provided the number of
employees and the salaries of each shall be con-
sistent with the number of employees and the sal-
aries of each as fixed by the Legislature in the
Biennial Departmental Appropriation Bill for like
service. The Director of the Department shall
prepare a budget covering operations through Au-
gust 31, 1953, and submit the same for approval of
the Legislative Budget Board and no warrants may
be issued by the Comptroller until the same shall
have been approved. Such budget shall be itemized."
(Emphasis ours.)

Although not controlling, we do think it significant to
note that in accordance with the provisions of Section 37, supra,
the Department of Public Safety presented to the Legislative Bud-
get Board for its approval the proposed budget of the Department
on November 1, 1951. The Legislative Budget Board, composed of
Lt. Governor Ben Ramsey, Chairman, Speaker Ruben Senterfitt,
Vice-Chairman, Senators Howard A. Carney, Jimmy Phillips,
Ottis E. Lock, and Keith Kelly, and Representatives Jim Lindsey,
Albert Jones, Ray Kirkpatrick, and W. H. Rampy, approved the
budget, one item of which provides as follows:

"That adequate quarters and facilities may be
provided for the Safety-Responsibility Division in
the new Headquarters Building for the Department
of Public Safety, now under construction, as author-
ized by Senate Bill 439, Regular Session, 51st Legis-
lature, the Department is authorized to supplement
the aforementioned building fund in the amount of
$100,000 from the funds appropriated for the fiscal
year ending August 31, 1952, by House Bill 219, passed
by the Regular Session of the 52nd Legislature."

Thus, it is to be seen that the Legislative Budget Board, composed
of members of the 52nd Legislature which enacted House Bill 219,
supra, undoubtedly construed the enactment as authorizing the ex-
penditure of the $100,000.00 in question for the purpose of provid-
ing adequate office space for the Safety-Responsibility Division in
the Headquarters Building of the Department of Public Safety.

It being fundamental that money may be withdrawn from
the State Treasury only under a specific appropriation,[1] the sole

---

1/ Article VIII, Section 6, Texas Constitution.

question is whether Section 37 contains language which permits the use of the funds appropriated for the purposes stated in your opinion request.  It is well settled that no particular form of wording is required to make an appropriation,and all that is necessary is authority for the expenditure and specification of the purpose.[2]

A reading of the appropriating section of the Motor Vehicle Safety-Responsibility Act reveals that the appropriated funds may be used to purchase "fixtures and equipment of any nature."  The term "fixture" has been often defined in the law. It is said to be a general rule with regard to fixtures that things personal in their nature which are fitted and prepared to be used with real estate, and are essential to its beneficial enjoyment, become part of the soil and pass with it under a deed of convey-ance, provided they are once annexed to the land and continue to be so used.[3]

In Hutchins v. Masterson, 46 Tex. 551 (1877), the court defined the term as follows:

"The word 'fixture' if a legal term, which Lord Campbell seems to doubt, it is universally conceded, is, as a substantive term, of modern origin.  . . .

"It is said, the weight of modern authorities establish the doctrine that the true criterion for determining whether a chattel has become an im-movable fixture, consists in the united applica-tion of the following tests:

"1st.  Has there been a real or constructive annexation of the article in question to the realty?

"2d.  Was there a fitness or adaptation of such article to the uses or purposes of the realty with which it is connected?

"3d.  Whether or not it was the intention of the party making the annexation that the chattel should

---

2/  National Biscuit Co. v. State, 134 Tex. 293, 135 S.W.2d 687 (1940); Pickle v. Finley, 91 Tex. 484, 44 S.W. 480 (1898).
3/  Citizens' Nat. Bank of Abilene v.  Elk Mfg. Co., 29 S.W. 2d 1062 (Tex. Comm. App. 1930).

> become a permanent accession to the freehold?
> -- this intention being inferable from the nature
> of the article, the relation and situation of the
> parties interested, the policy of the law in re-
> spect thereto, the mode of annexation, and the
> purpose or use for which the annexation is made."

The tests set out in the Hutchins case have been applied in Texas and other jurisdictions many times. As a result, there are decisions dealing with almost every type of property which can become fixed to the realty in such a manner as to become a part of the realty and hence a "fixture." We, therefore, must look to these cases with particular regard to the items which you enumerate in your letter to determine if those items come within the legal definition of "fixture" as that term is used by the Legislature in Section 37 of House Bill 219, supra.

It has been held that wiring which is used to convey electricity into a building is so attached to the realty as to become a part thereof.[4] Based upon the reasoning of the decisions with regard to those materials necessary to provide lighting for a building, it becomes obvious that wiring and other materials which are placed in a building so as to provide proper lighting are fixtures within the legal definition of that term. They are ordinarily placed in the walls or attached to the real estate in such a manner as to necessitate damage both to them as well as to the real property in any attempt to remove the lighting facilities from a building.

Plumbing, when installed in a building, has been held to be a fixture and to become a part of the real estate.[5] We think it is necessary to apply this general holding to the fact situation presented here and on the basis of the reasoning of the decisions holding that plumbing is a fixture, reach the conclusion that the term as used in Section 37 includes the plumbing necessary to finish the north wing of the new building for the Department of Public Safety.

---

4/ Keating Implement & Machine Co. v. Marshall Electric Light and Power Co., 74 Tex. 605, 12 S.W. 489 (1889).

5/ Johnson v. Pacific Land Co., 84 Ore. 356, 164 Pac. 564 (1917). In this case the court determined that the pipes and other materials necessary to supply water to a building were fixtures based upon: first, an annexation to the realty; second, their adaptation to use in the building; and third, the implied intention to make the annexation permanent. See also, Annotation 81 A.L.R. 1440 (1932).

Hon. Homer Garrison, Jr., page 6     (V-1521)

There are numerous decisions to the effect that the annexation of heating apparatus to the realty causes it to become a part of the realty. Similarly, a unified heating plant installed in a building is considered to be a permanent part of it.[6] It has also been held that the installation of pipes and other equipment used to convey the gas from a utility company's line to the stoves, plates, and water heaters in a house makes those pipes and other equipment fixtures and a part of the realty in the absence of some contract to the contrary.[7]

Air conditioning equipment has been held to be a fixture which, when installed in a building, becomes a part of the realty.[8] Similarly, it has been held in numerous cases that structures and improvements, in the nature of paving, platforms, and flooring, are fixtures and become a part of the realty.[9]

Based upon these authorities, we find that property necessary to provide lighting, plumbing, heating, cooling, and to construct floors and necessary partitions, are fixtures and when attached to the real property become a part thereof. We,therefore, conclude that the items which you enumerate in your request are within the term "fixtures and equipment of any nature" as contained in Section 37 of House Bill 219, supra, and consequently the funds appropriated in that section are appropriated for the purposes for which you intend their use.

SUMMARY

The Department of Public Safety may use the funds appropriated in Section 37 of H.B. 219, Acts 52nd Leg., R.S. 1951, ch. 498, p. 1210, for the purpose of finishing an unfinished section in the north

---

6/ Young v. Hatch, 99 Me. 465, 59 Atl. 950 (1905); Capeheart v. Foster, 61 Minn. 132, 63 N.W. 257 (1895).

7/ Harris v. Harris, 174 S.W.2d 996 (Tex. Civ. App. 1943).

8/ Nine Hundred Main, Inc. v. City of Houston, 150 S.W.2d 460 (Tex. Civ. App. 1941, error dism.).

9/ City of Savannah v. Standard Fuel Supply Co., 151 Ga. 145, 106 S.E. 178 (1921). See also, Annotation 13 A.L.R. 1454 (1921).

wing of the new Department of Public Safety Build-
ing by providing lighting, plumbing, heating, cool-
ing, and by the construction of a floor and neces-
sary partitions since that construction comes with-
in the term "fixtures and equipment of any nature"
as used by the Legislature in appropriating the
funds.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

Mary Kate Wall
Reviewing Assistant

Charles D. Mathews
First Assistant

By E. Jacobson

E. Jacobson
Assistant

EJ:wb:b